UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DERRELL PAYNE, #430-236, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-18-3418 |
| W. THOMAS, et al., | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Pro se Plaintiff Darrell Payne filed suit against Defendants Lieutenant Calvin Jones, Sergeant William Thomas, Correctional Officer II Jeremy Wolford, Correctional Officer II Brian Fann, Correctional Officer II Scott R. Bonner, Correctional Officer II Frank P. Miller, and Correctional Officer II Cody Gilpin (collectively, "Defendants") alleging deliberate indifference and violations of the Eighth Amendment, Fourth Amendment, and the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601, *et seq.* Defendants filed a motion to dismiss, or in the alternative, for summary judgment. Payne did not file a response. No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' motion for summary judgment will be granted.

### I.  *Facts*

Payne is serving a criminal sentence at North Branch Correctional Institution ("NBCI"). (Compl. ¶¶ 1–2, ECF No. 1.) On September 25, 2018, Payne was scheduled to leave NBCI to go to Somerset County District Court. (*Id.* ¶ 14; Wolford Rep., M.S.J. Ex 1 at 2, ECF No. 18-3.) Before leaving NBCI, Payne was asked to undergo a strip search, which he partially complied

1

with. (Compl. ¶¶ 14–15, Wolford Rep., M.S.J. Ex 1 at 2.) A strip search is required before an inmate is transported by the Maryland Correctional Transport Unit. (Jones Decl., M.S.J. Ex. 5 ¶ 4, ECF No. 18-7.) As part of this search, inmates are required to bend forward at the waist and spread the buttocks for a visual examination. (*Id.*) Accordingly, after completing the rest of the strip search, the officers asked Payne to "bend over at the waist[,] lock [his] knees[,] and spread [his] buttocks." (Compl. ¶ 15.) Payne told the officers "he felt uncomfortable with that order" and refused to comply. (*Id.*)

At this point, Lieutenant Jones arrived and told Payne that if he did not comply, Lieutenant Jones would call in the extraction team, which would hold Payne down and "spread his buttocks for him." (*Id.* ¶ 16.) Payne still refused to comply and told Lieutenant Jones such a search would constitute sexual assault and sexual harassment, and be a violation of "policy and procedure" and PREA law. (*Id.* ¶ 17; Wolford Rep., M.S.J. Ex. 1 at 2). Payne continued to refuse the officers' requests to bend over and spread his buttocks. (Compl. ¶ 18.)

After Payne's repeated refusals to comply, Chief of Security Bohrer authorized a Planned Use of Force to make Payne comply with the strip search. (Jones Decl., M.S.J. Ex. 5 at 5.) At this point, Payne was moved from the property room holding cell and placed in a "strip cage." (Wolford Rep., M.S.J. Ex 1 at 2.) Lieutenant Jones then assembled the Planned Use of Force Team, consisting of Sergeant Thomas and Officers Gilpin, Deist, Fann, Saville, Sowers, and Raley. (Jones Decl., M.S.J. Ex. 5 at 4.)[1] Lieutenant Jones said he then tried to use "de-escalation techniques" to induce Payne to comply with the remainder of the search, but Payne refused to comply. (*Id.*) Lieutenant Jones told Payne that he must comply with the strip search, and that if he did not comply, "force would be used to gain compliance." (*Id.* at 5–6.) Payne continued to

---

[1] At this point, there is video footage of the rest of the encounter. (*See* Bradley Decl. and Video, M.S.J. Ex. 13, ECF No. 18-15.)

refuse to comply. (*Id.*) Lieutenant Jones then ordered the officers to open the door to the strip cage. (*Id.* at 6.)

Payne alleges that the extraction team "rushed in the cage and one of the extraction team officers hit Mr. Payne in the face before taking Mr. Payne down." (Compl. ¶ 20.) Officer Gilpin entered the cell first. (Gilpin Decl., M.S.J. Ex. 6 ¶ 4, ECF No. 18-8; Bradley Decl. and Video, M.S.J. Ex. 13.) In his Declaration, Officer Gilpin explains that he was "assigned to enter the cell first and utilize the concave shaped shield to contain and limit . . . Payne's ability to assault staff until the other members of the team were able to gain control of his appendages." (Gilpin Decl., M.S.J. Ex. 6 ¶ 4.) Gilpin states that "[u]pon gaining control of his appendages, [Gilpin] abandoned the shield to maintain[] control of . . . Payne's head." (*Id.*) Gilpin states, "[a]t no time during the planned use of force did I intentionally target Derrell Payne's face or head with the shield, nor did I witness any of the other members of the extraction team intentionally strike inmate Payne in the face or head." (*Id.* ¶ 5.) The video footage shows Gilpin entering the cell with his shield up, Payne putting his hands up, and Gilpin appearing to forcefully push the shield into Payne who is near the back wall of the cell. (Bradley Decl. and Video, M.S.J. Ex. 13.) At that point the other officers briefly block the view of Payne. (*Id.*) Payne then reappears toward the ground in Gilpin's arms, and Gilpin has his arms in a hold around Payne's neck and torso. (*Id.*) Gilpin pulls him out of the cell, and then Payne is placed on the ground. (*Id.*)

Once Payne was restrained, Payne says "they bent him over and forcefully spread Mr. Payne['s] buttocks," which caused Payne's rectum to be "very sore." (Compl. ¶ 20.) Officers Saville and Fann spread Payne's buttocks apart. (Fann Decl., M.S.J. Ex. 8 at 2–3, ECF No. 18-10; Saville Decl., M.S.J. Ex. 9 at 2–3, ECF No. 18-11.) Payne asked to see a nurse and to "call

3

PREA." (Compl. ¶ 21.) A nurse saw Payne, who said that his rectum was sore, and then the nurse "walked off." (*Id.*)

The next day, Sargaent Thomas asked Payne if he wanted to call PREA. (*Id.* ¶ 22.) Payne said he did want to talk to PREA and was taken to a room with a female who said she was "something like PREA." (*Id.* ¶¶ 22–23.) Payne said he would talk to her but still wished to call PREA. (*Id.* ¶ 23.) Payne said he told the woman what happened, and the woman said she would look into it. (*Id.* ¶¶ 24–25.) Payne says he never heard anything else after that. (*Id.* ¶ 25.)

Payne states that the officers acted with deliberate indifference toward him by violating his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.* ¶ 27.) He also alleges that the strip search violated his Fourth Amendment rights and that this encounter and its aftermath violated PREA. (*Id.* ¶¶ 16–17.)

## II. Nature of the Motion

The Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56. Payne has not filed any response.

The Court will consider Defendants' motion as a motion for summary judgment under Rule 56 and not one seeking dismissal under Rule 12. Pursuant to Rule 12(d), a motion to dismiss must be converted into one for summary judgment if the moving party presents evidence outside of the pleadings that the court considers, so long as the parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." The court may deny or defer consideration of a summary judgment motion "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "[T]he nonmoving party cannot complain that summary judgment was granted without discovery

4

unless that party . . . made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Though Rule 56 contemplates that the opposing party file an affidavit or declaration, courts will still consider whether to deny or defer consideration of a summary judgment motion without this supporting documentation so long as the opposing party "has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).

Payne has not asserted that summary judgment is premature or that more time is needed to conduct necessary discovery. Because Payne has not raised any objection to treating Defendants' motion as one for summary judgment, the Court will consider Defendants' motion as one for summary judgment.

### *III.  Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230

(4th Cir. 2008). Still, the opposing party must present those facts and cannot rest on denials. The opposing party must set forth specific facts, either by affidavit or other evidentiary showing, demonstrating a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Furthermore, the opposing party must set forth more than a "mere . . . scintilla of evidence in support of [his] position." *Anderson*, 477 U.S. at 252.

The Court construes pro se complaints "liberally." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Pursuant to Rule 56, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Courts are "obligated" to "thoroughly analyze[]" unopposed motions for summary judgment. *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013). *See also Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("[T]he court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.").

*IV. Analysis*

Payne has alleged violations of PREA, the Fourth Amendment, and the Eighth Amendment. The Court will address each allegation in turn.

*a. PREA Violation*

Payne alleges that prison officials did not allow him to make a report to PREA and also claims that the strip search itself violated PREA. To the extent Payne brings a claim for liability based on an alleged violation of PREA, Payne's claim must fail because there is no private cause

of action under § 1983 to enforce a PREA violation. "[S]ection 1983 itself creates no rights; rather it provides 'a method for vindicating federal rights elsewhere conferred.'" *Kendall v. City of Chesapeake*, 174 F.3d 437, 440 (4th Cir. 1999) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002). PREA does not contain any indication that Congress intended to create a private right of action. *See, e.g., Williams v. Dovey*, Civ. No. DKC-15-1891, 2016 WL 810707, at *7 (D. Md. Mar. 2, 2016) ("Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act."); *Chinnici v. Edwards*, Civ. No. JGM-07-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) ("The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights.") (internal citation omitted). Accordingly, because Payne has no private right of action under PREA, the Court will grant summary judgment to Defendants on Payne's PREA claims.

### *b. Fourth Amendment*

Payne claims that the Defendants violated his Fourth Amendment rights when they wrongfully forced him to submit to a strip search. As the Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012). In *Bell v. Wolfish*, 441 U.S. 520, 558 (1979), the Supreme Court held that requiring prisoners to undergo strip searches, including a visual body cavity search, after having contact visitors was not an unreasonable search in violation of the Fourth Amendment. The body cavity search at issue in

7

*Bell* required male inmates to "bend over to spread his buttocks for visual inspection." *Id.* at 558 n.39. In determining whether such a search is reasonable under the Fourth Amendment, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559.

As a preliminary matter, "[b]ody cavity searches do not violate the Fourth Amendment if reasonable and not motivated by punitive intent." *Bushee v. Angelone*, 7 F. App'x 182, 184 (4th Cir. 2001) (citing *Bell*, 441 U.S. at 545–46). Here, there is no evidence that Payne's strip search was motivated by punitive intent. Instead, the uncontroverted evidence shows that the strip search was conducted pursuant to a policy which required prisoners to undergo strip searches before leaving the prison. (Jones Decl., M.S.J. Ex. 5 ¶ 4.)

A forced strip search is deeply invasive, but the record indicates that the balance of the *Bell* factors supports the reasonableness of the search. First, the search was conducted in private. *See Polk v. Montgomery Cty.*, 782 F.2d 1196, 1201 (4th Cir. 1986) (whether a strip search is conducted in private is "especially relevant in determining whether a strip search is reasonable under the circumstances"). Second, the search was conducted by members of the same gender. *See Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) ("involuntary exposure" of prisoner's genitals to members of the opposite sex "may be especially demeaning and humiliating" and should not occur unless "reasonably necessary"). The search was conducted based on prison policy that required prisoners leaving NBCI to undergo a strip search prior to transport, and Payne had multiple opportunities to voluntarily comply and avoid any physical contact. (Jones Decl., M.S.J. Ex. 5 at 1, 4–6.) The search was also conducted in a professional manner and recorded on video. *See Harris v. Miller*, 818 F.3d 49, 59–60 (2d Cir. 2016) ("A strip search conducted in a professional manner is more reasonable than one that is not."). The video footage shows that the officers spread

Payne's buttocks very briefly. (Bradley Decl. and Video, M.S.J. Ex. 13.) Payne does not allege in his Complaint that the officers penetrated his genitals.[2] While a significant amount of force was used in order to restrain Payne and conduct the strip search, the record and video does not contain any evidence that the level of force used was gratuitous or unnecessary in light of Payne's refusal to follow orders and complete the strip search. Accordingly, this search, though invasive, was not unreasonable under the Fourth Amendment, and the Court will grant Defendants' Motion for Summary Judgment on this claim.

### c. *Eighth Amendment*

Payne also asserts a violation of the Eighth Amendment based on the forced takedown and strip search. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams*, 77 F.3d at 761.

---

[2] Defendants explain that Payne stated to a prison nurse that he was anally penetrated during this search—a statement he then denied. (*See* M.S.J. at 7–8.) The Court will not address that issue because: 1) Payne has not raised it in his filings, and 2) there is no evidence that any anal penetration occurred during this search. In the video, the camera cuts off part of Payne's body during the strip search, which prevents the Court from seeing the entirety of Payne's buttocks when the officers spread his buttocks. (Bradley Decl. and Video, M.S.J. Ex. 13.) Roman Raley, the officer who was operating the camera at the time of the incident, stated in his Declaration, "I observed the spreading of inmate Payne's buttocks for the inspection of contraband. At no time did the correctional officers anally penetrate inmate Payne." (Raley Decl., M.S.J. Ex. 12 ¶ 3.) Officers Fann and Saville also each testified, "I did not anally penetrate inmate Derrell Payne when spreading his buttocks to inspect the area for contraband." (Fann Decl., M.S.J. Ex. 8 at 1; Saville Decl., M.S.J. Ex. 9 at 1.) Therefore, the Court sees no evidence suggesting that anal penetration occurred or that Payne meant to bring a claim alleging such penetration.

9

Construed liberally, Payne appears to argue that his Eighth Amendment rights were violated when he was forced to comply with the strip search and when he failed to receive medical treatment following the strip search. The Court will address each in turn.

### i. Excessive Force

In order to satisfy the subjective element for a use of force claim under the Eighth Amendment, an inmate must show that the guards used force "'maliciously or sadistically for the very purpose of causing harm'" rather than "'in a good faith effort to maintain or restore discipline.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In assessing this element, courts should consider "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of any reasonably perceived threat . . .'; and (4) 'any efforts made to temper the severity of a forceful response.'" *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. *Id.* at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

Even if the Defendants here used a nontrivial amount of force, there is no evidence that the subjective element of an Eighth Amendment use of force claim is satisfied. Instead, the

10

uncontroverted evidence shows that the strip search was conducted pursuant to a policy which required prisoners to undergo strip searches before leaving the prison. When Payne continued to refuse to comply with the order to complete the strip search, force was required in order to complete the search. As for the level of threat Payne posed, though Payne was in a confined space and was undressed when the extraction team entered in order to remove him, he had resisted all orders to comply with the strip search up to that point, and put his hands up to seemingly block the shield when Office Gilpin entered the cell. Judged by Payne's repeated refusals to comply with orders, it was not unreasonable for the Defendants to expect that Payne would offer some level of physical resistance to the strip search. The officers also made repeated "efforts to temper the severity of a forceful response," *Iko*, 535 F.3d at 239, by giving Payne multiple chances to comply with the order to bend over and spread his buttocks for visual examination and thereby avoid any physical contact. Therefore, all of the *Whitley* factors demonstrate that force was used "'in a good faith effort to maintain or restore discipline.'" *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320–21).

Payne also alleges that "one of the extraction team officers hit Mr. Payne in the face before taking Mr. Payne down." (Compl. ¶ 20.) In his Declaration, Officer Gilpin states, "[a]t no time during the planned use of force did I intentionally target Derrell Payne's face or head with the shield, nor did I witness any of the other members of the extraction team intentionally strike inmate Payne in the face or head." (Gilpin Decl., M.S.J. Ex. 6 ¶ 5.) The video footage shows Gilpin entering the cell with his shield up, Payne putting his hands up, and Gilpin appearing to forcefully push the shield into Payne who is near the back wall of the cell. (Bradley Decl. and Video, M.S.J. Ex. 13.) At that point the other officers block the view of Payne briefly. (*Id.*) Payne then reappears toward the ground in Gilpin's arms, and Gilpin has his arms in a hold around Payne's neck and

torso. (*Id.*) Gilpin pulls him out of the cell, and then Payne is placed on the ground, where the other officers restrain him in order to finish the strip search. (*Id.*)

Payne has not responded to Defendants' motion for summary judgment and thus has not contested Officer Gilpin's description of the incident. Nor did Payne's original Complaint allege that this "hit" was intentional or malicious as opposed to being part of the take down which was used to restrain him. Because there is no evidence in the record which would suggest this hit was used "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline," *Hudson*, 503 U.S. at 6, no reasonable jury could find in Payne's favor on this issue.

Accordingly, the Court concludes that there is no genuine issue of material fact on Payne's Eighth Amendment excessive force claim and the Court will grant Defendants' motion for summary judgment.

### ii. *Deliberate Indifference*

Lastly, Payne alleges that Defendants "acted with deliberate indifference" toward him in violation of the Eighth Amendment. (Compl. ¶ 27.) Construing his Complaint liberally, the Court will address a deliberate indifference claim based on his medical treatment following the strip search. To prevail on a deliberate indifference claim, a plaintiff must satisfy two requirements. First, the plaintiff must establish the "objective" component by illustrating a serious medical need. *See Estelle*, 429 U.S. at 105. A serious medical need is one that has "been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Second, the plaintiff must establish the "subjective" component by showing deliberate indifference on the part of the defendant. *Wilson v. Seiter*, 501 U.S. 294, 303

(1991). "Deliberate indifference" lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To be liable, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Id.* at 837. Relief is reserved for cases in which the official's conduct is "egregious" and involves an "'unnecessary and wanton infliction of pain.'" *King v. United States*, 536 F. App'x 358, 364 (4th Cir. 2013) (quoting *Wilson*, 501 U.S. at 297).

Payne fails to provide any evidence which would support his deliberate indifference claim. Payne has failed to demonstrate that he had a serious medical need or that Defendants demonstrated deliberate indifference toward any potential injury. Payne claims that his rectum was sore after the strip search and that he asked Lieutenant Jones to see a nurse. (Compl. ¶¶ 20, 21.) Payne then saw a nurse, who heard his complaint about a sore rectum and, according to Payne, "walked off." (*Id.* ¶ 21.) Defendants submitted the nurse's report from that meeting detailing Payne's complaints and the nurse's evaluation. (Klepitch Rep., M.S.J. Ex 1 at 22–23.) Defendants also submitted medical records demonstrating that Payne visited the nurse again the following day and was evaluated again. (Pierce Rep., M.S.J. Ex 1 at 20–21.) Nothing in this documentation suggests that Payne's medical needs were ignored, or that he had any serious medical issues in need of treatment. Accordingly, the Court will grant Defendants' summary judgment motion on this claim.

## V.  *Conclusion*

For the foregoing reasons, an Order shall enter granting Defendants' Motion for Summary Judgment.

DATED this 21 day of February, 2020.

BY THE COURT:

*James K. Bredar*
James K. Bredar
Chief Judge